IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOHAMMED ALMASHHADANI, *et al.,* : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil No. 5:20-cv-04681-JMG |
| : | |
| NORRIS MCLAUGHLIN, P.A., *et al.,* : | |
| Defendants. : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                      **June 15, 2021**

Plaintiffs Mohammed and Henaa Almashhadani bring this suit under the Fair Debt Collection Practices Act (FDCPA) and Pennsylvania state law against Defendants SN Servicing Corporation, TSREO, LLC, and Norris McLaughlin, P.A. The claims stem from contentious foreclosure proceedings against Plaintiffs, throughout which Defendants allegedly made false representations and charged unreasonable fees. Before the Court are Defendants' motions to dismiss. For the reasons explained below, the motions will be granted in part and denied in part.

**I.    BACKGROUND[1]**

In 2005, Plaintiffs obtained a second mortgage on their Philadelphia home. Am. Compl. ¶¶ 7–9, ECF No. 5 [hereinafter "Am. Compl."]. Soon after, in 2007, Plaintiffs filed for Chapter 13 bankruptcy. *Id.* ¶ 10. Pursuant to a Chapter 13 reorganization plan, Plaintiffs made payments toward their second mortgage. *Id.* ¶ 11. By November 2012, they satisfied the full arrearage claim on that mortgage. *Id.* ¶ 13.

---

[1]   This summary is based on the factual allegations contained in the complaint. For purposes of this motion, the allegations are presumed to be true and are construed in the light most favorable to Plaintiffs.

Two years later, Plaintiffs' mortgage servicer filed a foreclosure complaint, claiming that Plaintiffs had not made any payments toward their second mortgage in sixty months. *Id.* ¶¶ 16–18. The servicer alleged that Plaintiffs owed $55,911.79, "which included thousands of dollars in late charges and interest which were improperly added to the loan." *Id.* ¶ 22. Plaintiffs disputed the debt, but were ultimately pressured into signing a loan modification agreement because of the servicer's "false and fraudulent representations." *Id.* ¶¶ 25–26.

Servicing of Plaintiffs' second mortgage was then transferred to Defendant SN Servicing Corporation, while Defendant TSREO, LLC assumed ownership of the loan. *Id.* ¶ 28. Both SN Servicing and TSREO "attempted to mislead and deceive Plaintiffs" by charging unauthorized fees. *Id.* ¶¶ 29–31. Plaintiffs contested the charges and ultimately stopped making monthly payments in 2017, hoping that SN Servicing and TSREO would either reorganize or modify the mortgage. *Id.* ¶¶ 30, 32. They did neither, instead adding a $800 legal fee to Plaintiffs' account even though Plaintiffs "were not in foreclosure and no actual legal work had been performed." *Id.* ¶¶ 33–35.

On October 5, 2017, Defendant Norris McLaughlin, P.A., a law firm, sent Plaintiffs a notice of intention to foreclose on behalf of SN Servicing and TSREO. *Id.* ¶ 36. Once again, before the commencement of any foreclosure proceedings, SN Servicing added further "legal fees and 'foreclosure expenses' to the [Plaintiffs'] loan." *Id.* ¶ 40. According to statements issued by SN Servicing, Plaintiffs owed $950 in fees and $407.34 in "foreclosure expenses." *Id.* ¶ 42. However, the foreclosure complaint, filed on February 13, 2018, claimed that Plaintiffs owed $2,400 in attorneys' fees. *Id.* ¶¶ 41–43. On February 27, 2018, Norris McLaughlin sent Plaintiffs a letter, now calling for $3,396.57 in attorneys' fees. *Id.* ¶ 75; *see also* Am. Compl. Ex. F, ECF No. 5-6.

Excessive legal fees and "hundreds of dollars in improper 'corporate advances'" continued to accumulate throughout the foreclosure. Am. Compl. ¶¶ 45, 47. Plaintiffs' "attempts to dispute these fees were fruitless." *Id.* ¶ 46.

By October 16, 2019, Defendants' fees had ballooned to $23,065.74, in addition to the $26,997.51 principal balance of the mortgage. *Id.* ¶¶ 48–49. The following month, SN Servicing and TSREO, through their counsel, Norris McLaughlin, moved for summary judgment in the foreclosure action, and asserted that Plaintiffs owed a total balance of $53,436.41. *Id.* ¶¶ 50–51. According to Plaintiffs, the motion sought "false and fraudulent fees that were not demanded in the foreclosure complaint." *Id.* ¶ 69; *see also id.* ¶ 53.

In December 2019, "[i]n an effort to stop even more fraudulent fees from being added to their loan," Plaintiffs paid off their mortgage by mailing funds to Norris McLaughlin. *Id.* ¶¶ 58–59; *see also id.* ¶ 56.

## II.   STANDARD

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). In other words, "there must be some showing

sufficient to justify moving the case beyond the pleadings to the next stage of litigation." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008).

Third Circuit courts deploy a three-step analysis when faced with motions to dismiss. First, we identify "the elements [the] plaintiff must plead to state a claim." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675). Next, we "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, we assume the veracity of well-pleaded factual allegations, "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). For purposes of this analysis, we "accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

### III. DISCUSSION

#### A. FDCPA (Count Two)

Plaintiffs allege that SN Servicing and Norris McLaughlin violated the FDCPA by misrepresenting the amount of attorneys' fees owed during the foreclosure proceedings. Am. Compl. ¶¶ 68–70. Specifically, Plaintiffs point to the summary judgment motion that SN Servicing and Norris McLaughlin filed in November 2019, which demanded "false and fraudulent fees that were not demanded in the foreclosure complaint." *Id.* ¶ 69; *see also id.* ¶¶ 50–53.

"To state a claim under the FDCPA, a plaintiff must establish that: (1) he or she is a consumer who was harmed by violations of the FDCPA; (2) that the 'debt' arose out of a transaction entered into primarily for personal, family, or household purposes; (3) that the defendant collecting the debt is a 'debt collector;' and (4) that the defendant violated, by act or omission, a provision of the FDCPA." *Johns v. Northland Grp., Inc.*, 76 F. Supp. 3d 590, 597

4

(E.D. Pa. 2014) (citing *Donohue v. Reg'l Adjustment Bureau, Inc.*, No. 12-cv-1460, 2013 WL 1285469, at *3 (E.D. Pa. Mar. 28, 2013)).

Norris McLaughlin does not assert that Plaintiffs have failed to plead these elements. Instead, it argues that Plaintiffs' claim, filed in 2020, is time-barred. *See* Def.'s Mot. 5–7, ECF No. 9. According to Norris McLaughlin, the relevant FDCPA violation occurred on February 27, 2018, when it allegedly sent a letter to Plaintiffs requesting improper fees. *Id.* at 7. This allegation, the argument goes, falls outside the FDCPA's one-year statute of limitations, which runs from "the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Rotkiske v. Klemm*, 890 F.3d 422, 424 (3d Cir. 2018).

Norris McLaughlin raises an affirmative defense, and "a complaint need not anticipate or overcome affirmative defenses." *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014). Accordingly, "[a] complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citing *Schmidt*, 770 F.3d at 249).

*Hemphill v. Nationstar Mortgage LLC*, No. 18-2451, 2018 WL 4929864 (E.D. Pa. Oct. 10, 2018), is instructive here. In that case, the plaintiff premised her FDCPA claim on defendants' conduct during a foreclosure proceeding. *Id.* at *3. Namely, defendants filed a motion for summary judgment during the foreclosure, "which included—for the first time—an assessment for attorney fees that [p]laintiff allege[d] she did not actually owe." *Id.* at *4. Defendants moved to dismiss on statute of limitations grounds, arguing that plaintiff had "not alleged a violation that [was] sufficiently independent from the act of filing for foreclosure." *Id.* at *3. Because the foreclosure proceeding was initiated outside the FDCPA's one-year limitations period, defendants

5

claimed that its conduct during the proceeding was effectively immunized from FDCPA scrutiny. *Id.*

The *Hemphill* court disagreed. It recognized that "discrete actions taken during litigation may constitute independent violations of the FDCPA . . . and carry their own limitations period." *Id.* at *4. Indeed, a filing or statement made during a foreclosure litigation "may independently give rise to an FDCPA claim" if it contains "new or additional misstatements." *Id.* (internal quotation marks and citation omitted). The court therefore found that defendants' summary judgment motion independently gave rise to an FDCPA claim because it presented a "novel" misrepresentation of plaintiff's debt. *Id.* Additionally, "[s]ince [p]laintiff filed her initial complaint on May 11, 2018, and the statement was made in the . . . summary judgment motion filed on December 4, 2017, the statement [fell] within the one-year statute of limitations provided by the FDCPA, and [was] timely asserted." *Id.*; *see also Brown v. Udren Law Offs. PC*, No. 11-2697, 2011 WL 4011411, at *6 (E.D. Pa. Sept. 9, 2011) ("Conduct which independently violates the FDCPA . . . is actionable if it falls within the limitations period, even if undertaken in pursuit of litigation that was filed outside the limitations period."); *Strader v. U.S. Bank Nat'l Ass'n*, No. 2:17-cv-684, 2018 WL 741425, at *13 (W.D. Pa. Feb. 7, 2018) ("If otherwise timely or 'fresh' violations of the FDCPA were forced to relate back to the date of the filing of the debt collection action, attorneys would, in essence, have immunity for any FDCPA violations committed within one (1) year of the later federal filing if the debt collection began more than one (1) year before the federal filing.").

The allegations in *Hemphill* mirror those presented here. There, plaintiff successfully anchored her FDCPA claim to a statement contained within a summary judgment motion. We likewise find that Plaintiffs have stated an FDCPA claim based on Defendants' summary judgment

motion in the foreclosure proceeding.  As in *Hemphill*, the summary judgment motion in this case presented a novel misrepresentation of attorneys' fees—thus giving rise to an independent FDCPA claim.  And because Plaintiffs filed the instant lawsuit less than one year later, their FDCPA claim is not time-barred.

SN Servicing makes a separate argument for dismissal.  It summarily contends that "[n]o support exists for the conclusion that a lender in foreclosure may not add fees and costs incurred in the foreclosure action after the complaint is filed."  Def.'s Mot. 15, ECF No. 6.  That may be so, but SN Servicing misses the point.  Plaintiffs are not challenging SN Servicing's ability to levy fees; they are instead challenging the assessment of fees for "work not actually performed."  Am. Compl. ¶ 68.  Viewed in the light most favorable to Plaintiffs, this allegation states a plausible FDCPA claim.  *See, e.g.*, *Hemphill*, 2018 WL 4929864, at *4 (recognizing that a statement that "conceivably misrepresent[s] the amount of the debt owed" forms a basis for an FDCPA claim).

### B.     Loan Interest and Protection Law (Count Four)

Plaintiffs allege that Norris McLaughlin, SN Servicing, and TSREO violated Pennsylvania's Loan Interest and Protection Law (LIPL) "by contracting for . . . and receiving" unreasonable attorneys' fees.  Am. Compl. ¶ 80; *see also id.* ¶¶ 50–53, 59, 69.

"The Loan Interest and Protection Law, commonly referred to as Act 6, is a consumer protection statute for residential mortgage debtors that provides an extensive program designed to avoid mortgage foreclosures."  *Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 308 (Pa. 2018) (internal quotation marks and citation omitted).  Plaintiffs invoke Section 406 of the LIPL, which limits the attorney's fees that a "residential mortgage lender shall contract for or receive . . . from a residential mortgage debtor."  41 P.S. § 406; *see also* Am. Compl. ¶ 80.  "Under Section 406, lenders may only 'contract for or receive' 'reasonable and actually incurred' fees, in

connection with certain legal proceedings." *Hemphill*, 2018 WL 4929864, at *10 (quoting 41 P.S. § 406); *see also Sayre v. Customers Bank*, No. 14-3740, 2015 WL 3458790, at *6 (E.D. Pa. May 29, 2015) ("[I]f foreclosure or other equivalent action has been instituted, reasonable fees may be assessed." (internal quotation marks and citation omitted)).

After the foreclosure suit began, Plaintiffs allegedly paid unreasonable attorneys' fees by mailing a check to Norris McLaughlin. Am. Compl. ¶ 59. This sole allegation, Norris McLaughlin argues, "does not state a redressable claim under the LIPL." Def.'s Mot. 14, ECF No. 9. Norris McLaughlin further contends that, "[a]s the law firm bringing the foreclosure action on behalf of the other two co-Defendants," it cannot be held liable under the LIPL. *Id.* at 13; *see also id.* ("Plaintiff is faulting the law firm for requesting, claiming, or seeking 'improper' fees.").

We disagree, and find that Norris McLaughlin's view of the LIPL is too narrow. The Pennsylvania Supreme Court entertained a similar claim in *Glover v. Udren Law Offs., P.C.*, 139 A.3d 195 (Pa. 2016). There, plaintiff alleged that the law firm representing her residential mortgage lender violated the LIPL by collecting "excessive and unearned fees in connection with mortgage foreclosure proceedings against her." *Id.* at 196. In response, the firm argued that, "[b]ecause it was undisputedly not a residential mortgage lender," it could not be held liable under the LIPL. *Id.* at 197. The court disagreed. It recognized that the LIPL "provides a remedy against any 'person' who has collected unlawful attorney's fees." *Id.* at 198. Simply put, "a borrower may recover . . . from any entity—not solely the residential mortgage lender—that collects excessive attorney's fees in connection with a foreclosure." *Id.* at 200.

With *Glover*'s guidance in mind, we find that Plaintiffs have stated a cognizable LIPL claim against Norris McLaughlin. They plausibly allege that Norris McLaughlin collected

8

excessive attorneys' fees—for work not incurred—in connection with a foreclosure. Am. Compl. ¶¶ 58–59; 68. This is sufficient to survive dismissal.

SN Servicing and TSREO make several unavailing arguments for dismissal. First, they contend that Plaintiffs' LIPL claims fall outside the two-year limitations period. *See* Def.'s Mot. 14, ECF No. 6; Def.'s Mot. 14, ECF No. 7. This argument can be rejected out of hand. As SN Servicing and TSREO later recognized in their reply briefing, the LIPL does not have a two-year statute of limitations. *See* Def.'s Reply 7, ECF No. 16; Def.'s Reply 7, ECF No. 17. It instead carries a four-year limitations period, *see* 41 P.S. § 502, so we will not dismiss Plaintiffs' claims as time-barred.[2]

SN Servicing and TSREO next argue that the complaint contains "no averments describing the fees incurred in the contested litigation that Plaintiffs consider[] improper." Def.'s Mot. 17, ECF No. 6; Def.'s Mot. 16, ECF No. 7. But Plaintiffs have, for example, pointed to $14,481.23 in attorneys' fees "for work that was never performed" and "which were never actually related to the foreclosure proceedings." Am. Compl. ¶¶ 50–53. Plaintiffs ultimately paid these "inflated," "improper" fees in December 2019. *Id.* ¶¶ 56–59. This is sufficient to state an LIPL claim. *See, e.g.*, *Owens v. JP Morgan Chase Bank*, No. 18-1421, 2019 WL 1791278, at *6 (W.D. Pa. Apr. 24, 2019) (denying motion to dismiss LIPL claim where defendant allegedly "collect[ed], or

---

[2]    Further, SN Servicing and TSREO curiously argue that Plaintiffs' amended complaint "was untimely filed." *See, e.g.*, Def.'s Reply 1, ECF No. 16; Def.'s Reply 1, ECF No. 17. They cite the Pennsylvania Rules of Civil Procedure in support of this argument. However, it is axiomatic that a "removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters." 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3738 (4th ed. 2021). Here, Plaintiffs timely amended their complaint under Federal Rule of Civil Procedure 15(a)(1)(B).

attempt[ed] to collect excessive attorney's fees," and rejecting defendant's statute of limitations argument).

SN Servicing and TSREO finally argue that they fall outside the LIPL's reach because they are not "residential mortgage lenders." *See* Def.'s Reply 6, ECF No. 16; Def.'s Reply 6, ECF No. 17. But, as explained above, the LIPL allows a borrower to recover "from any entity—not solely the residential mortgage lender—that collects excessive attorney's fees in connection with a foreclosure." *Glover*, 139 A.3d at 200. SN Servicing and TSREO allegedly collected excessive attorney's fees—for work not incurred—from Plaintiffs in connection with a foreclosure, so they are not exempt from LIPL liability.[3]

### C. Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection Law (Counts One and Three)

Plaintiffs also assert claims under Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA) and Unfair Trade Practices and Consumer Protection Law (UTPCPL) against Norris McLaughlin, SN Servicing, and TSREO. Am. Compl. ¶¶ 60–64, 71–77. We examine FCEUA and UTPCPL claims in tandem: "Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use . . . the remedial provision of the UTPCPL[] to obtain relief." *Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015) (quoting *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013)).

---

[3] In any event, a "residential mortgage lender" under the LIPL is "any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt. *The term shall also include the holder at any time of a residential mortgage obligation.*" 41 P.S. § 101 (emphasis added); *see also Hemphill*, 2018 WL 4929864, at *11 n.3. TSREO, as the "owner[]" of Plaintiffs' loan, *see* Am. Compl. ¶ 28, "fit[s] within the second sentence of the definition." *Hemphill*, 2018 WL 4929864, at *11 n.3.

As an initial matter, a plaintiff "need only establish a viable claim under the FDCPA in order to state sufficient claims under the FCEUA and UTPCPL." *Stuart v. AR Res., Inc.*, No. 10-3520, 2011 WL 904167, at *5 (E.D. Pa. Mar. 16, 2011). Because Plaintiffs have alleged viable FDCPA claims against Norris McLaughlin and SN Servicing, we find that they have also stated viable FCEUA and UTPCPL claims against those entities. *See, e.g.*, *id.*; *Donohue*, 2013 WL 1285469, at *8; *Yentin v. Michaels, Louis & Assocs., Inc.*, No. 11-0088, 2011 WL 4104675, at *1 (E.D. Pa. Sept. 15, 2011) ("[A] plaintiff that states a claim for violation of the FDCPA has also stated a claim under the FCEUA and UTPCPL . . . ."); *see also Sosso v. ESB Bank*, No. 16-367, 2016 WL 3855031, at *4 (W.D. Pa. July 15, 2016) (recognizing that a plaintiff who states a cognizable FDCPA claim "should be permitted to go forward with his FCEUA and UTPCPL claims as well" (citing *Yelin v. Swartz*, 790 F. Supp. 2d 331, 336 (E.D. Pa. 2011))).[4]

We now turn to Plaintiffs' FCEUA and UTPCPL claims against TSREO. "To allege a claim under either the UTPCPL or the FCEUA, 'a plaintiff must demonstrate (1) ascertainable loss of money or property, real or personal (2) as a result of the defendant's prohibited conduct under the statute.'" *Rivera v. Bayview Loan Servicing*, No. 19-877, 2020 WL 1508328, at *6 (E.D. Pa. Mar. 30, 2020) (quoting *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 180 (3d Cir. 2015)). "To show that the loss was 'a result of' the defendant's behavior, a plaintiff must allege she justifiably relied on the defendant's fraudulent or deceptive conduct." *Id.* (citing *Yocca v. Pittsburgh Steelers*

---

[4] However, to the extent Plaintiffs seek damages for emotional distress under the UTPCPL, *see* Am. Compl. ¶ 64, their claims will be dismissed. *See, e.g.*, *Sosso*, 2016 WL 3855031, at *5; *Walkup*, 147 F. Supp. 3d at 358 ("Shame, embarrassment, and emotional distress are personal injuries and are thus not cognizable under the UTPCPL.").

*Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004)).  TSREO primarily challenges Plaintiffs' allegations of justifiable reliance.[5]

Plaintiffs have not shown that they justifiably relied on TSREO's alleged misrepresentations.  "[A] court may determine, even at the motion to dismiss stage, that a plaintiff's allegations of justifiable reliance fail as a matter of law." *Plumbers' Loc. Union No. 690 Health Plan v. Apotex Corp.*, No. 16-665, 2017 WL 4235773, at *7 (E.D. Pa. Sept. 25, 2017) (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008)).  As relevant here, "a plaintiff cannot assert justifiable reliance based upon 'an allegedly fraudulent misrepresentation if he knows it to be false.'" *Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d 628, 634 (E.D. Pa. 2019) (quoting *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 207 (Pa. 2007)).

Plaintiffs consistently "disputed" TSREO's assessment of foreclosure fees, knowing that they "were false." *See, e.g.*, Am. Compl. ¶¶ 30, 35, 45–47.  "As a result, it cannot be said that Plaintiff[s] ha[ve] 'relied' upon the Defendant's purported misrepresentations or deceptive acts in any meaningful sense." *Stone*, 416 F. Supp. 3d at 634; *see also id.* ("[K]nowledge of Defendant's allegedly wrongful behavior . . . bars [plaintiff] from bringing a claim against Defendant under the UTPCPL.").  For this reason, we will dismiss Plaintiffs' FCEUA and UTPCPL claims against TSREO.[6]

---

[5]     TSREO also asserts that a "two-year limitations period" bars Plaintiffs' FCEUA and UTPCPL claims.  Def.'s Mot. 14, ECF No. 7.  Not only does this argument misstate the law—the UTPCPL has a six-year statute of limitations—but Plaintiffs have raised allegations that fall within the FCEUA's two-year limitations period. *See Brasch v. Wells Fargo Bank, N.A.*, No. 17-3263, 2018 WL 3632094, at *3 (E.D. Pa. July 31, 2018) (discussing the UTPCPL's statute of limitations).

[6]     These claims are dismissed with prejudice, as any attempt to amend them would be futile. *See Plumbers' Loc. Union*, 2017 WL 4235773, at *14 n.17 (dismissing UTPCPL claims without leave to amend where plaintiff knew the falsity of defendants' purported misrepresentations).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions are granted in part and denied in part. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge
